**STATE of Missouri, Respondent,**

v.

**Huey J. LOVE, Appellant.**

**No. WD 44465.**

Missouri Court of Appeals,
Western District.

March 31, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 2, 1992.

Application to Transfer Denied
July 21, 1992.

William F. O'Sullivan, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Phillip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before TURNAGE, P.J., and KENNEDY and BERREY, JJ.

KENNEDY, Judge.

Defendant was convicted upon jury trial of possession of cocaine in violation of Sections 195.020.1 and 195.200.1(1), RSMo 1986. He was sentenced to two year's imprisonment and fined. Defendant appeals from that judgment.

The state's evidence tended to show that at approximately 4:15 a.m. on the morning of March 4, 1989, Officer Jack Foster of the Kansas City Police Department was sitting in his marked police car writing a report. Officer Foster noticed the headlights of a vehicle coming down the street towards him. The newer model General Motors vehicle turned the corner "at a rather fast speed." (The vehicle was later shown to be a 1989 Buick.) He heard the tires squeal. He thought he saw defendant run a stop sign.[1] He suspected that the car might have been stolen so he decided to follow it. He testified that he "sped up." When he was approximately two car lengths behind the vehicle, he "paced the vehicle for a short period of time," and clocked defendant's speed at "[a]pproximately 50 to 55 miles an hour."

---

1. Defendant was later issued a ticket for failing to stop. This charge, however, was dropped when the prosecutor ascertained that there was no stop sign at the intersection.

Officer Foster turned on his emergency flashing lights. Defendant pulled over and threw both of his arms out the window of the car. Officer Foster testified that he noticed a rental sticker on the rear bumper of the car. He testified that he suspected a stolen vehicle, as he had noticed "a pattern of stolen autos recovered ... in the area." He also suspected drug activity. He drew his service revolver as he left his car.

Officer Foster ordered defendant out of the vehicle, placed defendant in a "spread eagle" position and patted him down. Officer Foster noticed that defendant was trembling and his hands were shaking. He handcuffed defendant and walked up to the driver's side of the vehicle. With the aid of his flashlight, he peered into the front seat; he noticed a hand-held portable telephone and a brown plastic bag, tied at the top, lying on the floorboard of the front seat.

Officer Foster asked defendant if he would sign a consent-to-search form. He led defendant to the patrol car. When a second officer arrived, defendant's handcuffs were removed and the officers witnessed defendant placing his signature upon the consent form.

Officer Foster requested a K–9 unit drug detection dog to aid in the search. After the door to defendant's vehicle was opened, the dog located the brown bag on the front floorboard and began sniffing and pawing at it—"a strong aggressive response"—signifying a drug find. The K–9 unit dog handler, Officer Faulkner, opened the bag and found, what was later chemically analyzed to be, crack cocaine. The 49 grams of cocaine had an approximate street value of $4,900.

As his first point, defendant argues that the trial court erred in admitting the brown plastic bag containing the crack cocaine. The search of his automobile was unlawful, defendant says, because Officer Foster lacked probable cause and his consent to search was not voluntarily given. The trial court denied defendant's motion to suppress the cocaine and admitted it in evidence over defendant's objection.

## CONSENT TO SEARCH

Since we find sufficient evidence to support the trial court's ruling that defendant's consent to search was voluntary, we need not reach the issue of probable cause for his stop and his arrest.

It is axiomatic that the Fourth Amendment prohibits warrantless searches. It is equally clear that one of the "established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2044, 36 L.Ed.2d 854 (1973). Consent must be voluntary, not induced by fraud or coercion and may be express or implied. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2047–48. If defendant voluntarily consented to the search of his vehicle, then the evidence obtained was admissible against him.

The trial court must look to the "totality of the circumstances" under which the consent was allegedly given in deciding the voluntariness of the consent. *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. at 2059. "In determining whether there is a voluntary consent to search, the court may consider such factors as the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody, whether there was any fraud on the part of the officers, the acts and statements of the consenter, and other matters comprising the 'totality of the circumstances.'" *State v. Riefle*, 714 S.W.2d 604, 605–06 (Mo.App. 1986).

Officer Foster's drawing of his weapon, use of handcuffs and "frisk" on a traffic violation, together with the presence of two officers in a custodial situation and his own nervous reactions says defendant, are sufficient factors to indicate coercion or duress, rendering the consent involuntary in nature. We cannot agree.

The trial court could have inferred from Officer Foster's testimony that the drawing of his weapon and use of handcuffs

was reasonable—for his safety and protection—in light of defendant's somewhat unusual reaction of thrusting his arms out the window. Once defendant was frisked and the threat of danger dispelled, Officer Foster reholstered his weapon. The record is clear that no weapon was pointed towards defendant at the time he signed the consent.

Evidence was presented from which the trial court could infer that defendant's handcuffs were removed within a short time after the frisk was completed, and after the second officer had arrived. Officer Mulloy, the second officer on the scene, testified that he was "in the immediate vicinity" when he heard Officer Foster's call for an assisting unit and that when he arrived the defendant was sitting in the front seat of the patrol car. He said defendant was not handcuffed at that time. Officer Foster explained the written consent to defendant before he signed it.

■■■ The use of two officers cannot be said to be an excessive show of authority. *See, e.g., State v. Grannemann,* 715 S.W.2d 563 (Mo.App.1986) (finding consent to search voluntary even though defendant was handcuffed, surrounded by five officers, was not told that he had a right to refuse to consent to search and did not give his consent in writing). Although the defendant was in custody at the time his consent was given, this factor does not necessarily invalidate the consent. *State v. Hunter,* 750 S.W.2d 134, 136–37 (Mo.App. 1988).

It is clear from the record that defendant was exceedingly nervous. We cannot say that such nervousness was caused by any coercive techniques by the officers involved. The trial court could have reasonably inferred that defendant's nervousness stemmed from his being caught with $4,900 worth of crack cocaine in his possession.

We hold there was sufficient evidence to support the trial court's ruling, upon defendant's motion to suppress the cocaine, that defendant's consent was voluntary and not the product of duress, coercion or fraud.

Since defendant voluntarily consented to the search of his vehicle, we cannot say that the trial court erred in admitting the bag containing the 49 grams of crack cocaine. Defendant's first point is denied.

## POSSESSION OF THE CONTRABAND

■■ As his second point defendant argues that there was insufficient evidence from which the jury could find that he knowingly possessed the cocaine discovered on the floorboard of the rental car. The thrust of his argument is that he had not rented the car and that the duration of his possession of the car was never established.

When reviewing the sufficiency of the evidence, we consider all substantial evidence and any reasonable inferences therefrom in the light most favorable to the verdict and we reject all contrary evidence and inferences. *State v. Feltrop,* 803 S.W.2d 1, 11 (Mo. banc 1991), *cert. denied,* —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

■■ Where a person has exclusive control over the place where the drugs are found, the jury may infer the defendant's conscious and knowing possession or control of the contraband. *See State v. Mitchell,* 811 S.W.2d 809, 812 (Mo.App.1991); *State v. Johnson,* 811 S.W.2d 411, 413 (Mo. App.1991). Assuming arguendo, that defendant's possession of the car was nonexclusive the record still contains sufficient evidence from which the jury could infer knowing possession or control.

Defendant was in exclusive possession of the vehicle when stopped by Officer Foster. The jury could consider defendant's extreme nervousness as an indication of his awareness of the contents of the bag. *See State v. Burkhardt,* 795 S.W.2d 399, 405 (Mo. banc 1990). The jury could consider the amount and value of the drugs as tending to show defendant's conscious and knowing possession of the cocaine. *See State v. Weide,* 812 S.W.2d 866, 869 (Mo. App.1991).

We cannot say, as a matter of law, that there was insufficient evidence to show that defendant knowingly possessed the cocaine found on the floorboard of the car

over which he exhibited exclusive control at the time of the valid stop by Officer Foster.

Defendant's second point is denied.

Judgment affirmed.